UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| THOMAS E. GIRON, ) | 3:09-cv-00126-HDM(RAM) |
| Plaintiff, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| vs. ) | **OF U.S. MAGISTRATE JUDGE** |
| ) | |
| RICHARD GARCIA, et al., ) | |
| ) | |
| Defendants. ) | |

This Report and Recommendation is made to the Honorable Howard D. McKibben, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court is Defendants' Motion to Dismiss. (Doc. #9.)[1] Plaintiff has opposed (Doc. #12). Also before the court is Plaintiff's Motion for Summary Judgment (Doc. #13). Defendants have opposed (Doc. #16), and Plaintiff has replied (Doc. #19). After a thorough review, the court recommends that both motions be denied.

## I. BACKGROUND

At all relevant times, Plaintiff Thomas E. Giron was in the custody of the Nevada Department of Corrections (NDOC) as an inmate at the Lovelock Correctional Center (LCC). (Pl.'s Compl. 1 (Doc. #4).) Plaintiff, a *pro se* prisoner, brings this action pursuant to 42 U.S.C. § 1983. Defendants are all NDOC employees. (Pl.'s Compl. 2.) Plaintiff seeks compensatory

---

[1] Refers to court's docket number.

and punitive damages, injunctive relief, legal expenses, a declaratory judgment, and the return of his prayer blanket. (*Id.* at 9.)

In a screening order issued July 27, 2009, the court construed Plaintiff's complaint as stating claims under the First Amendment, 42 U.S.C. § 2000cc *et seq.*, which is the Religious Land Use and Institutionalized Persons Act (RLUIPA), and the Equal Protection Clause of the Fourteenth Amendment.  (Screening Order (Doc #3).)

In Count I, Plaintiff alleges Defendants violated Plaintiff's First Amendment rights to free exercise of religion, and RLUIPA, by depriving him of his prayer blanket and refusing to return it.  (Pl.'s Compl. 4.)

In Count II, Plaintiff claims Defendants violated the Equal Protection Clause of the Fourteenth Amendment by refusing Plaintiff his prayer blanket while other inmates and religious groups are allowed to use prayer blankets and similar items.  (*Id.* at 5.)

## II. FAILURE TO EXHAUST

**A.    LEGAL STANDARD**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues.  *Booth v. Churner*, 532 U.S. 731, 741 (2001).   The Supreme Court recently clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original); *see, e.g.*, *Jones v. Stewart*, 457 F. Supp. 2d 1131, 1134 (D. Nev. 2006) ("proper exhaustion" consists of fully addressing the grievance on the merits and complying with all critical procedural rules

2

and deadlines).

This court has interpreted Justice Alito's majority opinion in *Woodford* as setting forth two tests for "proper exhaustion": (1) the "merits test," satisfied when a plaintiff's grievance is fully addressed on the merits by the administrative agency and appealed through all the agency's levels, and (2) the "compliance test," satisfied when a plaintiff complies with all critical procedural rules and deadlines. *Jones v. Stewart*, 457 F. Supp. 2d 1131, 1134 (D. Nev. 2006). "A finding that a plaintiff has met either test is sufficient for a finding of 'proper exhaustion'. Defendants must show that Plaintiff failed to meet both the merits and compliance tests to succeed in a motion to dismiss for failure to exhaust administrative remedies." *Id*.

The failure to exhaust administrative remedies is treated as a matter in abatement and is properly raised in an unenumerated Rule 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.2003), *cert. denied*, 540 U.S. 810 (2003). Failure to exhaust administrative remedies is an affirmative defense, and defendants bear the burden of raising and proving failure to exhaust. *Id*. A court, in deciding a motion to dismiss based on exhaustion, may look beyond the pleadings and decide disputed issues of fact without converting the motion into one for summary judgment. *Id*. (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368 (9th Cir. 1988) (per curiam)). If a court concludes that the prisoner bringing a suit has failed to exhaust nonjudicial remedies, "the proper remedy is dismissal of the claim without prejudice." *Id*. at 1120.

**B.   DISCUSSION**

Defendants have moved to dismiss Plaintiff's claims due to his failure to exhaust an additional administrative remedy. (Defs.' Mot. to Dismiss 3-4 (Doc. #9).) Defendants assert that although Plaintiff has exhausted the grievance process of Administrative Regulation 740 (AR 740), Plaintiff has not exhausted an additional administrative remedy for seeking religious property established in the Religious Practice Manual for the NDOC. (Defs.' Mot. to Dismiss 1.) At issue in this case is which prison administration procedures govern Plaintiff's dispute.

///

3

For prisoners within the NDOC system, the standard exhaustion of administrative remedies requires complying with the Inmate Grievance Procedure set forth in NDOC AR 740. The administrative grievance process consists of: (1) an Informal Level grievance that is reviewed and responded to by an inmate caseworker; (2) a First Level formal written grievance appealing the informal grievance decision to the warden at the institution where the inmate is housed; and (3) a Second Level grievance appealing the First Level grievance decision, which is decided by the Assistant Director of Operations. (officially published at http://www.doc.nv.gov/ar/pdf/AR740.pdf)(Last accessed May 27, 2010).  If an inmate disagrees with the response to any grievance, he may appeal the grievance to the next available level within the prescribed deadlines.  (*Id.*)

AR 810 regulates religious practices in NDOC facilities and refers to the Religious Practice Manual to govern established religious activities within the NDOC. (Defs.' Mot. to Dismiss Ex. A. at 3-4.)  Inmates seeking approval of new religious property must first make a written request for the property to the facility Chaplain, who will meet with the inmate and, if he deems it necessary, provide the inmate with a Request for the Accommodation of Religious Practice Form. (*Id.* at 17.) After the inmate completes the form and returns it to the Chaplain, with all relevant documentation attached, the Chaplain forwards the request to the Religious Review Team (RRT). (*Id.*)  The RRT, which is comprised of a Warden, a Chaplain and a Deputy Attorney General, has ninety days to research the proposal and submit a recommendation to the regional Deputy Director (DD). (*Id.* at 17, 31.) If the RRT recommends approval, the DDs submit the recommendation to all Wardens for comment. (*Id.* at 18.) If the DD of the region in question approves the request, the Faith Group Overview is amended. (*Id.*) If the DD denies the request, the requesting inmate will be notified in writing and a copy of the decision will be maintained in the inmate's file. (*Id.*)

Plaintiff attaches his inmate grievance report showing denial of his claims on all three mandated levels of AR 740. (Pl.'s Reply, Ex. 3. (Doc #12).) Defendants concede that Plaintiff properly complied with the grievance procedure in AR 740. (Defs.' Opp'n to Mot. for Summ.

1  J. 4.) Defendants, however, argue that Plaintiff fails to exhaust his administrative remedies
2  because AR 810 applies to Plaintiff's claim. Defendants' argument fails for two reasons.

3  First, Defendants misconstrue Plaintiff's claims. Defendants maintain that Plaintiff's
4  "files reflect that he never filed a Request for Accommodation of Religious Practice [F]orm
5  requesting a prayer blanket" as required by AR 810. (Defs.' Mot. to Dismiss 4.) Defendants
6  construe Plaintiff's claims too narrowly. Plaintiff's prospective challenge to the regulation
7  stating that Native Americans are not entitled to prayer blankets does not absolve Defendants
8  from potential liability for taking Plaintiff's property from him, allegedly depriving him of his
9  freedom to practice religion and violating the Equal Protection Clause. Plaintiff's grievance was
10 not merely to change policy regarding approved religious items, but to have his own property
11 returned to him and be treated equally as other religious groups and inmates. In other words,
12 Plaintiff seeks retrospective relief, grievable through AR 740, for a deprivation of freedom to
13 practice religion, not simply prospective relief to add prayer blankets to the list of approved
14 religious items for Native Americans. The court rejects Defendants' interpretation of Plaintiff's
15 claims as too narrow.

16 Next, the court addresses which NDOC administrative remedies Plaintiff must have
17 exhausted. In *Jones v. Bock*, 549 U.S. 199, 218 (2007), the Court explained that the "applicable
18 procedural rules [for proper exhaustion] are defined not by the PLRA, but by the prison
19 grievance process itself." In *Jones*, the prison officials argued that the prisoner failed to
20 exhaust because he did not properly name all defendants in his grievances. *Id.* at 217. The
21 Court rejected the prison officials' argument because the department of corrections procedures
22 failed to mention such a prerequisite to proper exhaustion. *Id.* at 218. Here, AR 740 defines
23 the boundaries of the prison grievance system. Plaintiff's grievances notified prison officials
24 as to the nature of the wrong, namely, the violation of freedom to practice religion and violation
25 of equal protection. *See Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (explaining that
26 a grievance need only alert the prison to the nature of the wrong for which redress is sought).
27 Defendants had an opportunity to resolve the dispute within their own control. Defendants do
28

5

1 not point to any aspect of AR 740 to support their contention that grievances concerning
2 freedom to practice religion and equal protection require exhaustion not only under AR 740
3 but also under AR 810. Because Plaintiff properly complied with all critical procedural
4 requirements of AR 740 and no section of AR 740 indicates that other action is necessary,
5 Plaintiff has properly exhausted all available remedies.

6 Second, Plaintiff cannot be held to the AR 810 procedural standard for requesting new
7 religious property because AR 810 was not in existence until at least one year after Plaintiff first
8 initiated the AR 740 grievance process. Plaintiff filed his first grievance on June 4, 2007, and
9 had been denied by all three levels of the AR 740 grievance process by August 31, 2007. (Pl.'s
10 Reply 3.) AR 810, in its present state, was not enacted until June 2008. (Defs.' Mot. to
11 Dismiss Ex. A. 2.) The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall
12 be brought with respect to prison conditions under section 1983 of this title, or any other
13 Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such
14 administrative remedies as are *available* are exhausted." 42 U.S.C. § 1997e(a)(emphasis
15 added). The provisions in AR 810 were not available to Plaintiff at the time he properly
16 exhausted the grievance procedure. In order to follow AR 810, after being denied on the merits
17 on all levels of the AR 740 grievance process, Plaintiff would have had to go back to the
18 Chaplain (where Plaintiff also started with the AR 740 grievance procedure) and subsequently
19 refile his claim.

20 The general purpose of the PLRA is to "curtail what Congress perceived to be inmate
21 abuses of the judicial process." *Ortiz v. McBride*, 380 F.3d 649, 658 (2d Cir. 2004).
22 Defendants should not benefit from the inability of a Plaintiff to "find her way" in prison
23 policies. *Goebert v. Lee County*, 510 F.3d 1312, 1323 (11th Cir. 2007). An unknown remedy is
24 not "available" within the meaning of § 1997e(a). *Id*. "That which is unknown and unknowable
25 is unavailable." *Id*. Here, Plaintiff could not have known to use the policy in AR 810 because
26 it did not exist. The prison cannot implement new policies that retroactively challenge a
27 properly filed grievance under existing policies. Plaintiff appropriately filed grievances under
28

1 AR 740 and has not abused the judicial process. The prison had its opportunity to address the
2 issue through all levels of the grievance process. The purpose of any exhaustion requirement
3 has not been thwarted. Therefore, Plaintiff exhausted his available administrative remedies
4 and Defendants' motion to dismiss should be denied.

## III. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**A.    LEGAL STANDARD**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (citing Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). In doing so, the court must defer to the professional judgment of prison administrators when an inmate civil rights complaint is involved. *Beard v. Banks*, 548 U.S. 521, 526, 530 (2006); *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson,* 477 U.S. at 248. Although the parties may submit evidence in an inadmissible form, only evidence

7

which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.**   **DISCUSSION**

Discovery in this case has not commenced, much less concluded. At this stage in the proceedings, Plaintiff's Motion for Summary Judgment is premature. Plaintiff's motion is inappropriate until a factual basis is developed upon which the court can rest its analysis. Therefore, the court dismisses Plaintiff's Motion for Summary Judgment without prejudice to renew upon completion of adequate discovery and in accordance with the forthcoming scheduling order.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **DENYING** Defendants' Motion to Dismiss (Doc. #9).

**IT IS FURTHER RECOMMENDED** that the District Judge enter an Order **DENYING** Plaintiff's Motion for Summary Judgment (Doc. #13), without prejudice and with leave to renew.

/ / /

/ / /

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: June 2, 2010.

_____
UNITED STATES MAGISTRATE JUDGE